# In the United States Court of Federal Claims

No. 23-793
Filed: May 24, 2024

**JOHN D. MCCARTHY,**

        *Plaintiff*,

v.

**THE UNITED STATES,**

        *Defendant*.

*Daniel K. Bean*, Abel Bean Law PA, Jacksonville, Florida, for Plaintiff.

*Joshua A. Mandelbaum*, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., *John Corrigan*, Department of the Navy, Of Counsel, for Defendant.

### MEMORANDUM OPINION AND ORDER

**TAPP, Judge.**

    The path forward is sometimes lit by the light of bridges burning behind us. Here, Plaintiff John D. McCarthy ("Dr. McCarthy") entered into a scholarship agreement with the United States Navy. The Navy agreed to pay for Dr. McCarthy's medical education if he served as a Navy doctor after completion of his medical school education. After twice failing a required exam, and prior to graduation, the Navy disenrolled Dr. McCarthy, separated him from service, and sought to recoup the scholarship. Dr. McCarthy challenged the Navy's actions administratively, then at the district court, and now, here.

    While the Navy acknowledges error as to the process separating Dr. McCarthy, it disputes Dr. McCarthy's claim that he should not have been separated at all. Despite the Navy's offers, Dr. McCarthy resists joining the Navy in any form in exchange for offsetting his debts—seeing that bridge as burnt. Dr. McCarthy seeks various forms of relief, including automatic promotion to the rank of lieutenant, constructive credit for active duty dating back to his involuntary separation, and other declaratory relief. The Court finds that the Military Pay Act does not entitle Dr. McCarthy to monetary damages, further denying other equitable relief as such relief would not be collateral to money damages.

### I.    Background

    Dr. McCarthy graduated from the Naval Academy in 2005 and served six years on active duty before the Navy honorably discharged him in 2011. (Administrative Record ("AR") 5, ECF No. 10; Compl. Ex. B at 83–5, ECF No. 1). After discharge, the Navy placed Dr. McCarthy on

inactive duty in the Individual Ready Reserves ("IRR"). (AR 4). In 2013, Dr. McCarthy received conditional release from the IRR to enter a military doctor pipeline program known as the Armed Forces Health Professions Scholarship Program ("AFHPSP" or the "Scholarship Program"). (Compl. Ex. C at 86–93).[1] The Scholarship Program ensures that the armed forces obtain adequate numbers of commissioned officers on active duty who are either qualified in "various health professions" or can serve as health professionals "with specific skills to assist in providing mental health care" to the members of the armed forces. 10 U.S.C. § 2121(a)(1).

Scholarship participants agree that they will be "commissioned in the reserve component of the Navy . . . in the rank and grade of Ensign (O1)[.]" (Compl. Ex. C at 87); *see also* 10 U.S.C. § 2121(c)(1). Participants also serve on active duty, in the pay grade O-1 (ensign) for 45 days each year to "receive military and professional training and instruction." *Id.* In exchange, participants "incur[] an active duty obligation" of at least one year for each year of participation in the program. *Id.* at § 2123(a). If participants are "relieved of" active-duty obligations before completing them, they may be, "with or without their consent," subject to "alternative obligations," such as repaying a percentage of the total cost of the Scholarship. *Id.* at § 2123(e)(1).

Participants may be "dropped from the program for deficiency in conduct or studies, or for other reasons" as the Secretary's regulations prescribe, and may be still "required to perform active duty in an appropriate military capacity in accordance with the active-duty obligation." § 2123(c). The Secretary may require participants to enter "into a written agreement," as a condition for receiving education assistance. 10 U.S.C. § 2005(a). Under the terms of these agreements, the Secretary may require participant to (1) complete certain education requirements, (2) commit to serving on active duty or fulfilling their repayment obligations by other means, and (3) follow any other terms and conditions the Secretary may set. *Id.*

The Department of Defense ("DoD") and Navy issued additional AFHPSP regulations and instructions. (*See* Def.'s Mot. App. at 701–16, ECF No. 11-1). For example, the Navy Medicine Manpower Personnel Training and Education Command ("MPT&E") issued Instruction 1520.1D (2010), which provides that "[s]tudents must comply with the instructions and responsibilities outlined," in their "handbook, their service agreement[,] and all relevant instructions," and that "failure to comply with all written AFHPSP instructions," including "handbook, contract, other Navy and [DoD] instructions" might result in "immediate termination of Navy support for a student's academic program, with possible recoupment of all monies disbursed[.]" (Def.'s Mot. App. at 731–32 (§ 1-2)).

Paragraph 12 of the AFHPSP Service Agreement, signed by Dr. McCarthy, stated that he agreed to "take and pass parts I and II," of the Comprehensive Osteopathic Medical Licensing

---

[1] Dr. McCarthy's exhibits are included in his Complaint document; therefore, they have continuous pagination and are found at ECF No. 1.

Examination (COMLEX),[2] and that "Part II of the examination must be taken and passed . . . before 15 September of the fourth academic curriculum year and results must be provided to AFHPSP Manager by 15 October of fourth-year." (AR 90; Compl. Ex. C at 91).[3] The same paragraph stated that a second failure of the examination "may result in loss of scholarship eligibility." (*Id.*).

In December 2016, Dr. McCarthy failed part 2 of the COMLEX test for the second time. (AR 12–13, 299, 528; Def.'s Mot. App. 692). Approximately four months prior to graduation, the Navy notified Dr. McCarthy that the Bureau of Medicine and Surgery ("BUMED") recommended administrative separation and recoupment due to his twice failure to pass the Part II of COMPLEX. (Compl. Ex. X at 251). In response, Dr. McCarthy notified the Navy that he was taking the exam for the third time in February and that he was seeking an extension for filing his rebuttal statement with the Navy until March after receiving the results of his February exam. (Compl. Ex. Y at 257–58). The Navy granted that request. (*Id.*).

Dr. McCarthy passed the exam on his third attempt, in February, and requested that the Navy retain him in the Program. (Compl. Ex. Z at 260). Dr. McCarthy went on to complete his medical school education and was "slated to return to active duty" as a "Navy medical officer assigned to internship training in Internal Medicine at Naval Medical Center Portsmouth." (Compl. at 94–95). Two days before receiving his medical degree, the Navy Personnel Command ("NPC") authorized Dr. McCarthy's separation from the Navy Reserve and notified him that he was immediately involuntarily discharged from the Navy Reserve. (*Id*. at Ex. ii 281–84; AR 13, 147–49). In subsequent correspondence, the Navy explained that the ground for dismissal was his non-compliance with the Scholarship Program and that a recoupment demand would follow. (Compl. Ex. ii at 288, Ex. JJ at 283–84). Dr. McCarthy timely submitted a remission of debt request, which the Navy ultimately denied. (Compl. Ex. S at 134–236; Ex. ii at 288).

Dr. McCarthy later petitioned the Board for Correction of Naval Record ("BCNR" or "the Board") to correct his military record and to bar the Navy's recoupment attempt. (Compl. Ex. SS at 302–03; AR 125–45). That same month, Dr. McCarthy filed a lawsuit in the middle district court of Florida. (Def.'s Mot. App. 1–56, 300).[4] The path of the administrative action and the district court litigation intertwine from there.

---

[2] The COMLEX is a "three-level, national standardized licensure examination designed for licensure for the practice of osteopathic medicine." *COMLEX-USA*, NBOME, https://www.nbome.org/assessments/comlex-usa/ (last visited May 16, 2024).

[3] COMLEX Part I refers to a written cognitive examination that is numerically scored and COMLEX Part II refers to a practical examination that is scored as pass/fail. (Compl. at 26–27).

[4] Dr. McCarthy's complaint sought declaratory relief, arguing that the Navy "(1) wrongfully withdrew him from the AFHPSP (Count I); (2) wrongfully separated him from the Navy without following the procedures set forth in 10 U.S.C. § 12683 (Count II); (3) wrongfully denied him

The United States moved to dismiss that case for failure to exhaust administrative remedies. (*Id.* at 57–67). The district court dismissed Dr. McCarthy's claim for declaratory judgment regarding wrongful withdrawal from the Scholarship Program for lack of subject-matter jurisdiction and stayed the case pending the BCNR's review. (*Id.* at 299–306). Early on in that litigation, the United States represented that, given his prior years of service, there could have been "errors by the agency" in separating Dr. McCarthy from the Navy without first establishing a board of inquiry ("BOI") and that "to the extent that that's an error . . . agency is bound to fix it." (*See* Compl. Ex. fff at 395–97). Meanwhile, Dr. McCarthy's administrative challenge continued to play out.

BCNR's initially denied Dr. McCarthy's petition and found that he was afforded due process. (AR 93–95). Following a lengthy back-and-forth, the BCNR reversed course and found that Dr. McCarthy "was entitled to a BOI prior to his involuntary discharge, and the failure to provide him this right rendered his discharge invalid and an error warranting relief." (*See* Compl. Ex. ppp at 468; AR 15). The BCNR also found "the [] recoupment action pending against Petitioner to be unjust," given that finding. (AR 15). However, the BCNR unanimously rejected Dr. McCarthy's claim that his removal from the Scholarship Program was unlawful and agreed that the Navy had the authority to remove him for failing the COMLEX twice; it noted that Dr. McCarthy was "unambiguously informed" of that requirement through the Service Agreement. (AR 17). Despite disagreement within the BCNR, a minority BCNR recommended that the Navy consider relying on Dr. McCarthy's two failures of the COMLEX as "a ready basis to properly separate [him] from the Navy," under "substandard performance of duty," should he not return to active duty. (AR 19).

The Acting Assistant Secretary of the Navy for Manpower and Reserve Affairs adopted the minority position on that issue, recommending the following:

> Petitioner's discharge void; revoke recoupment action without prejudice; send back to BUMED to determine whether or not to invoke Petitioner's contractual obligation and resolve Petitioner's status in the Navy and recoupment obligation based upon that determination, with option to discharge for substandard performance of duty should BUMED decide not to bring Petitioner to active status[.]

(AR 20).

In the aftermath of this administrative decision, the district court lifted the stay, and Dr. McCarthy sought partial summary judgment for declaratory relief, "[c]onsistent with the BCNR's findings," that Dr. McCarthy was unlawfully separated from the Navy and that the recoupment action was unjust. (Def.'s Mot. App. at 401, 408). Dr. McCarthy also sought an order directing the Navy to "retroactively reinstate" him with "full active duty back pay," and

---

written discovery regarding his adversarial proceeding with the Navy (Count III); (4) wrongfully attempted to recoup the cost of Plaintiff's medical school (Count IV); and (5) violated the Florida Consumer Collection Practices Act." (Def.'s Mot. App. 300).

4

other benefits based on constructive service for retirement purposes, subject to his retroactive election to transition from active duty to IRR effective "June 4, 2021." (*Id*. at 410 n.3).

Administratively, the Navy offered to allow Dr. McCarthy to apply for a commission in lieu of separation so that he would receive "service credit commensurate with [his] civilian experience and prior active and reserve service." (*Id*. at 469–72). Alternatively, BUMED also gave Dr. McCarthy the option to pursue service in a different medical or non-medical community in the Navy. (*Id*. at 471). The Navy warned Dr. McCarthy that if he did not wish to serve, the Navy would initiate separation processing and that "separation may result in recoupment" of scholarship funds. (*Id*.). Dr. McCarthy rebuffed both offers. (Compl. Ex. iii at 419–25). Subsequently, BUMED issued a "report of substandard performance" to the Navy Personnel Command based on Dr. McCarthy's two-time failure of COMLEX and recommended that Dr. McCarthy show cause for retention in the Navy. (Def. Mot. App. 680–82). In August of 2023, the Navy notified Dr. McCarthy that a BOI would consider whether to retain him in the service unless he first voluntarily resigned. (*Id*. at 693–95).

In the district court, the United States argued that Dr. McCarthy's claims for "full back pay" through the "constructive service doctrine" should be dismissed for lack of subject-matter jurisdiction because the United States Court of Federal Claims had explicit statutory authority to provide the relief Dr. McCarthy requested. (Def.'s Mot. App at 570). Although Dr. McCarthy's amended complaint also sought various forms of equitable relief, the United States argued that when the "thrust of the suit" is seeking money damages, the district court lacks jurisdiction over the related equitable claims as well. *See* Def.'s Mot. to Dismiss, *McCarthy v. Del Toro*, No. 3:18-CV-1213-MMH-LLL, at 13 (M.D. Fl. May 10, 2022) (citing to *Consol. Edison v. United State*, 247 F.3d 1378, 1385 (Fed. Cir. 2001)). The district court accepted this proposition and determined it lacked jurisdiction.[5] Therefore, the district court dismissed Dr. McCarthy's complaint without prejudice. *Id*.

Dr. McCarthy sought reconsideration arguing that the district court should withdraw its dismissal order and instead transfer the case to the Court of Federal Claims. *See McCarthy v. Del Toro*, 2023 U.S. Dist. LEXIS 92803, *1 (M.D. Fl. May 26, 2023). The district court disagreed, finding that transferring the case was not in the interest of justice. *Id*. at *4. In particular, the court noted that neither party timely asked to transfer the case to the Court of Federal Claims in the event that the court concluded that it lacked jurisdiction and that Dr. McCarthy would not be

---

[5] The district court stated that granting the declaratory relief counts "would settle that [Dr. McCarthy] is entitled to an expenditure from the United States Treasury," and as such the "true nature" of the claim is one for money damages, belonging in the Court of Federal Claims. *McCarthy v. Del Toro*, 658 F. Supp. 3d 1148, 1155–56 (M.D. Fl. Mar. 1, 2023) ("Although McCarthy frames his complaint as seeking only declaratory and injunctive relief, he cannot avoid the limits of the Tucker Act through artful pleading."). The district court also found that the Court of Federal Claims can provide Dr. McCarthy "adequate relief," stressing that "[a]lthough the Court of Federal Claims generally cannot award equitable relief, it can grant equitable relief incidental and collateral to a money judgment." *Id*. at 1159.

prejudiced by starting the case over as any prejudice resulted from Dr. McCarthy's own "strategic decision" to file in the district court first. *Id*. at *5. The district court emphasized:

> Dr. McCarthy has always had the option of filing a case in the Court of Federal Claims, which plainly would have jurisdiction over the contractual and monetary portions of his claims. Or McCarthy could have pled a true Administrative Procedure Act claim in this Court. Instead, McCarthy attempted to "plead around" the Tucker Act to obtain a declaratory judgment from this Court that he could then use to get a monetary judgment from the Court of Federal Claims.

*Id*. Dr. McCarthy did not appeal that decision.

Dr. McCarthy subsequently filed in this Court seeking back pay for wrongful separation from the Navy and remission of indebtedness for his medical education. (*See* Compl. at 1–3). Dr. McCarthy further sought a declaration that the United States wrongfully dismissed him from the Scholarship Program, separated him from the Navy without due process owed to Naval officers with six years of active duty service, violated the Navy's due process regulations, and attempted to recoup the Scholarship cost. (*Id.*). Dr. McCarthy argued that he is entitled to application of the constructive service doctrine, providing him with "full back pay, allowances, after recognition of his automatic promotion to the grade of O-3," and other benefits of service including "active-duty credits for retirement purposes." (*Id.*). Alternatively, Dr. McCarthy argues that this Court should "hold unlawful and set aside those actions described above because these agency actions were arbitrary and capricious, in violation of federal law and regulation, in excess of statutory jurisdiction, authority, limitations, and short of statutory right." (*Id.*). The United States moves to dismiss Dr. McCarthy's claims for lack of subject matter jurisdiction or, alternatively, for judgment on the administrative record regarding two counts. (Def.'s Mot. to Dismiss ("Def.'s Mot."), ECF No. 11).

## II.   Analysis

Plaintiff must establish the Court's jurisdiction by a preponderance of the evidence. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988). When construing the pleadings, the Court will grant a motion to dismiss if "it appears beyond doubt," that no set of facts will support the claim which "would entitle [the plaintiff] to relief." *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 654 (1999) (quoting *Conley v. Gibson*, 355 U.S. 41, 46 (1957)). The Court reviews motions to dismiss based on a lack of jurisdiction by assuming that all undisputed facts alleged in the complaint are true and, as such, draws all reasonable inferences in the non-movant's favor. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). However, when the truth of alleged *jurisdictional* facts is challenged, the court can consider relevant evidence to resolve the factual dispute. *Vanalco v. United States*, 48 Fed. Cl. 68, 73 (2000).

Motions for judgment on the administrative record invite an "expedited trial on the record." *Bannum, Inc. v. United States*, 404 F.3d 1346, 1356 (Fed. Cir. 2005). Unlike the standard for summary judgment, "the standard for judgment on the administrative record is narrower" and involves determining, "given all the disputed and undisputed facts in the

administrative record, whether the plaintiff has met the burden of proof to show that the [challenged action or] decision was not in accordance with the law." *Martinez v. United States*, 77 Fed. Cl. 318, 324 (2007) (citing *Bannum*, 404 F.3d at 1357). The applicable standard of review for adverse military actions is whether the adverse decision was arbitrary, capricious, in bad faith, unsupported by substantial evidence, or contrary to law, regulation, or mandatory published procedure of a substantive nature, and a showing that, as a result, the plaintiff has been seriously prejudiced. *See Sanders v. United States*, 219 Ct. Cl. 285, 298 (1979).

### A. Retroactive Full Back-pay

Counts I and IV involve application of the constructive service doctrine. Dr. McCarthy seeks retroactive "reinstate[ment] to the position" held on the date of his separation from the Navy "with full back pay," and benefits under the constructive service doctrine, (Count I). (Compl. at 59–61). Dr. McCarthy bases his claim on BCNR's unanimous finding that he was entitled to a BOI prior to his involuntary discharge, which rendered "his discharge invalid." (*Id.*). Dr. McCarthy also asks for declaratory relief establishing that he is "entitled to the application of the constructive service doctrine, providing for full back pay, allowances," and "automatic promotion to the grade of O-3," which Dr. McCarthy asserts would have occurred but for the Navy's illegal discharge, (Count IV). (Compl. at 67–69). The United States argues that these two counts should be dismissed for failure to state a claim or denied as a matter of law. Dr. McCarthy is not entitled to *active*-duty back pay (or promotion), the United States argues, because he was not on active duty when he was separated from the Navy. (Def.'s Mot. at 31). Because neither the Tucker Act by itself nor the Military Pay Act provides the Court with jurisdiction to entertain back pay claims for reservists, the United States seeks dismissal of both counts. The United States advances the same argument about the constructive service doctrine, disputing its applicability to those in the reserves. The Court agrees.

The Military Pay Act provides jurisdiction for suits in the Court of Federal Claims "when the military, in violation of the Constitution, a statute, or a regulation, has denied military pay." *Antonellis v. United States*, 723 F.3d 1328, 1331 (Fed. Cir. 2013) (quoting *Dysart v. United States*, 369 F.3d 1303, 1315 (Fed. Cir. 2004)); *see also* 37 U.S.C. § 204(a)(1). But, in *Palmer v. United States*, 168 F.3d 1310, 1314 (1999), the Federal Circuit held that the Military Pay Act only recognizes entitlement for "service members serving on full-time active duty," adding that members who are "serving in part-time reserve duty," or were "wrongfully removed from one," have "no lawful pay claim against the United States for" unperformed duties.[6] The Circuit acknowledged that, in conjunction with the Supreme Court's holding that the Tucker Act alone cannot provide jurisdiction for awarding money damages, this finding leads to an unfortunate, but unavoidable conclusion: reservists are "often without recourse before the Court of Federal Claims" for adverse actions, even "when a service member on regular active duty would have such recourse if similarly treated." *Id.*; *see also Radziewicz v. United States*, 2023 WL 4717581,

---

[6] As the Circuit noted in *Palmer*, an exception, not applicable in this case, allows reservists to seek backpay, regardless of their status, for "drills actually attended and training actually performed." *See Riser v. United States*, 97 Fed. Cl. 679, 683 (2011) (citing *Palmer*, 168 F.3d at 1314).

at *4 (Fed. Cl. July 2023) ("Repeatedly, courts have dismissed cases for failure to state a claim when some wrongful action by federal government allegedly prevented the reservist from performing a duty because reservists on inactive status cannot receive backpay for any duties that they did not actually perform.").[7] Like the plaintiff in *Martinez v. United States*, 26 Cl. Ct. 1471, 1472 (1992), *aff'd*, 11 F.3d 1069 (Fed. Cir. 1993), who was disenrolled from his Reserve Officers' Training Corps ("ROTC") program before receiving his commission, Dr. McCarthy "was only paid a monthly stipend while on inactive duty . . . ." (Def.'s Mot. App. at 705 (OPNAV INSTRUCTION 1520.39 ¶ 16)). As the Court held in *Martinez*, the Military Pay Act does not allow the Court to base any relief on a plaintiff's "expectation of a commission," when the plaintiff is not receiving military pay at the time of separation. *See also Golding v. United States*, 48 Fed. Cl. 697, 699 (2001), *aff'd*, 47 F. App'x 939 (Fed. Cir. 2002).

The Court has identified the same scope for the constructive service doctrine, finding that the doctrine only provides relief if "the service member would have *remained* . . . on active duty" absent the adverse action. *Barnick v. United States*, 591 F.3d 1372, 1379 (Fed. Cir. 2010) (citations omitted) (emphasis added). Notably, the adverse actions in this case did not prevent Dr. McCarthy from remaining on active duty. *See also Nieves v. United States*, 133 Fed. Cl. 306, 311 (2017) ("Constructive service is a fiction courts allow because when a service member is *actively serving* and improperly terminated, there is a degree of certainty that but for the improper separation the service member would have continued to actively serve under the status quo.") (emphasis added). In his response to the motion to dismiss, Dr. McCarthy does not identify any other statutory basis supporting his back pay claim, or any case in which a servicemember who was not on active duty at the time of the adverse action received back pay for "constructive" active-duty service that they did not actually perform. (*See generally* Pl.'s Resp., ECF No. 13).

Dr. McCarthy argues that consistent with the AFHPSP contract terms and federal law he should have been "automatically promoted to Lieutenant on active duty on June 5, 2017, after graduating from medical school" like other Scholarship Program participants who completed the academic phase. (Pl.'s Resp. at 27).[8] This does not change the fact that Dr. McCarthy was not on

---

[7] There is some authority holding that actions concerning the rights and obligations outlined in enlistment contract and service agreements are reviewable in the district courts, when reservists are seeking relief *other* than military back pay, such as challenging an involuntary order to active duty. *See Irby v. United States*, 245 F. Supp. 2d 792 (E.D. VA 2003) (collecting cases); *see also Qualls v. Rumsfeld*, 357 F. Supp. 2d 274 (2005); *Kennedy v. United States*, 124 Fed. Cl. 309, 327–28 (2015), *rev'd on other grounds*, 845 F.3d 1376 (Fed. Cir. 2017) (Court of Federal Claims cannot review breach of scholarship agreement and wrongful discharge claims arising from such agreements when there is no direct statutory right to military pay).

[8] This characterization is also factually incorrect because under the AFHPSP, reservists are not automatically entitled to active duty pay upon graduation; instead, while the "Program stipend terminates on the day of graduation," the Navy instructions clearly state that, "Active duty pay will not start until the graduated student reports to his/her first duty station." (Def. Mot. App. at

active duty at the time the Navy disenrolled him from the Scholarship Program. (*See* Compl. at 33 (noting a disenrollment date of June 2, 2017)). Furthermore, the text of Dr. McCarthy's AFHPSP contract belies Dr. McCarthy's claim that it would be "consistent with the AFHPSP contract" to automatically promote him to Lieutenant on active duty after completion of the academic phase of the scholarship program; the AFHPSP contract does not guarantee that mere completion of the academic phase would result in automatic promotion. (Compl. Ex. C). Instead, the agreement explicitly established additional standards of performance to be achieved in completing the program.[9] (*Id.*).

Dr. McCarthy did not meet deadlines outlined in the AFHPSP contract. (Compl. at 29). The same provision of the AFHPSP contract provided that a "second time failure" of the COMLEX "may result in loss of scholarship eligibility." (*Id.* at 91). Therefore, the clear contract terms do not endorse Dr. McCarthy's position that mere completion of the academic phase of the scholarship program—when other standards required by the contract terms were not met—would have entitled him to automatic promotion. *Knightly v. United States*, 227 Ct. Cl. 767, 769 (1981) (finding that the Court does not have jurisdiction to provide "back pay claim predicated on a promotion not received.").

Dr. McCarthy also claims that *Smith v. Sec'y of the Army*, 384 F.3d 1288 (Fed. Cir. 2004), provides an exception for backpay claims when an "automatic promotion" can be assumed once the Military's legal error is reversed. (Pl.'s Resp. at 28–31). *Smith* applies to "unusual case[s]" where a plaintiff's legal theory shows that "there is a clear-cut legal entitlement" to the promotion in question—for example, when the plaintiff "has satisfied all the legal requirements for promotion, but the military has refused to recognize his status." *Smith*, 384 F.3d at 1292 (citing *Dysart v. United States*, 369 F.3d 1303, 1315–16 (Fed. Cir. 2004)); *Law v. United States*, 11 F.3d at 1065 (Fed. Cir. 1993) ("Law is not asking the Claims Court to order his promotion but to recognize that it had occurred."). Dr. McCarthy invokes this exception by arguing that "[o]nce Dr. McCarthy completed the four-year academic course of study" and "earned his medical degree on-time and in good standing, he had a 'clear-cut legal entitlement' to promotion to Lieutenant in the active duty force." (Pl.'s Resp. at 30). That position is incorrect: as noted above, mere completion of the four-year academic course of study in good standing is insufficient standing alone. The contract terms establish additional requirements,

---

803; *see also* March 7, 2024, Oral Argument Transcript ("OA Tr.") at 56:22–58:14 (the United States arguing that reservists under the program are not entitled to active duty pay on the day of graduation but instead must first physically "report for duty," under subsequently issued orders)). Accordingly, the Navy's instructions advised students to plan for this gap in pay, noting that the Navy "provides no additional pay/stipend until the officer reports for active duty," after receiving orders to active duty. (*Id.* at 806–07). Because of these additional interceding requirements, Dr. McCarthy was never "automatically" promoted to active duty, and the Navy's actions cannot be viewed as disrupting his active duty pay.

[9] Paragraph 12 of the AFHPSP contract stated that: "Part II of the [COMLEX] examination must be taken and passed after completing the third-year academic curriculum year but before 15 September of the fourth academic curriculum year and results must be provided to the AFHPSP Manager by 15 October of the fourth year." (Compl. Ex C. at 91).

9

which Dr. McCarthy did not meet. Moreover, *Smith* still involves the question of entitlement for *active* duty members who were denied promotions; Dr. McCarthy was a reservist. *Millican v. United States*, 2006 U.S. Claims LEXIS 673 *39 (Fed. Cl. Aug. 24, 2006) ("a Reserve officer cannot state a claim for back pay which is based on unperformed duties, even when the lack of performance was involuntary and improperly imposed."). As such the Court must dismiss Counts I and IV for failure to state a claim.

### B. Dr. McCarthy's Non-monetary Claims

Counts II and VI of Dr. McCarthy's Complaint seek declaratory relief stating that the Navy's attempt to recoup the cost of the Scholarship and decision to disenroll Dr. McCarthy from the Scholarship Program were unlawful. (Compl. at 61–64, 70–71). To provide equitable relief the Court must first have basis to enter "a money judgment." *James v. Caldera*, 159 F.3d 573, 580 (Fed. Cir. 1998) ("It is true that limited equitable relief sometimes is available in Tucker Act suits," but only when it is "an incident of and collateral" to "a money judgment."); *see also Bobula v. United States Department of Justice*, 970 F.2d 854, 859 (Fed. Cir. 1992). The United States argues that these claims should be dismissed because they are not "incidental of and collateral to" a money judgment . (Def.'s Mot. at 48); *see* 28 U.S.C. § 1491(a)(2); *Walker v. United States*, 117 Fed. Cl. 304, 323–24, *aff'd*, 587 F. App'x 651 (Fed. Cir. 2014). The United States maintains that the only impact of such judgment would be to "preclude future efforts by the Navy to separate Ensign McCarthy for substandard performance," or to preclude the Navy from recouping Dr. McCarthy's medical school costs. (Def.'s Mot. at 45). As the Court has held, Dr. McCarthy is not entitled (under either the Military Pay Act or the constructive service doctrine) to full back-pay as an active duty servicemember dating back to his separation date; nor can the Court automatically reinstate him to the position he would have received after graduation had he not been separated. Therefore, a declaratory judgment in favor of Dr. McCarthy on counts II and VI can only be "incidental of and collateral to" money judgment in the two forms identified by the United States: it could prevent the Navy from (1) recouping the debt or (2) separating Dr. McCarthy from the Navy.

Regarding the first option, the Court does not have jurisdiction to issue an incidental declaratory judgment. As the United States notes, claims for cancellation of debts are not claims for money damages, and a declaratory judgment is not "incidental of and collateral to" a money judgment just because it would have the impact of canceling a debt. *Flander v. United States*, 737 Fed. Appx. 530, 532 (Fed. Cir. 2018) ("Debt cancellation does not constitute monetary damages . . . .). The United States relies on *Gonzales & Gonzales Bonds & Ins. Agency, Inc. v. Dep't of Homeland Sec.*, 490 F.3d 940, 945 (Fed. Cir. 2007), where the Federal Circuit held that the jurisdiction for "debt cancellation claims," does not "lie in the Court of Federal Claims." Dr. McCarthy's response to the motion to dismiss does not address *Gonzales* or distinguish its holding. (*See generally* Pl.'s Resp.). As the Federal Circuit held in *Gonzales*, "there is a substantive difference between a plaintiff seeking the return of money it already paid the government and a plaintiff never having to pay the government in the first place." *Gonzales*, 490 F.3d at 945. Here, Dr. McCarthy is not seeking the return of money already paid, and as such Dr. McCarthy's claim for cancellation of debt must be dismissed. *See also Flander v. United States*, 737 F. App'x 530, 532 (Fed. Cir. 2018) ("We agree that the Court of Federal Claims did not have jurisdiction over plaintiff's claims for discharge of her student loan. Debt cancellation does not constitute monetary damages under the Tucker Act, and thus lies outside the jurisdiction of the

10

Court of Federal Claims."); *Summit Power Grp., LLC v. United States*, 139 Fed. Cl. 369, 373 (2018) ("Either outcome results in purely declaratory relief: plaintiffs seek a finding that they owe no debt to [Department of Energy ("DOE")] or, at the very least, a cancellation of any debt due to a breach by DOE. We agree with the government; on its face, this is not a money claim against United States.").[10]

Similarly, a declaratory judgment stating that Dr. McCarthy was wrongfully discharged from the Scholarship Program would not be "incidental of and collateral" to a money judgment. If Dr. McCarthy was not discharged from the Scholarship Program, under the service agreement the next step would have been for him to perform his side of the bargain. Dr. McCarthy agreed that upon graduation he would accept reappointment or designation with the Navy, and actually serve within the health profession. (Compl. Ex C. at 88). However, Dr. McCarthy loudly declares that he has no intention to return to active service thereby burning that particular bridge. The record is replete with Dr. McCarthy's resistance to such a notion:

- "Once [the United States] ignored Dr. McCarthy's substantial rights and summarily fired him in violation of federal law, Dr. McCarthy rightfully grew wary of likely reprisals and whistleblower treatment should he return to Navy service." (Pl.'s Resp. at 32–33).

- The Navy's "professional slander has forced Dr. McCarthy to let go of his dream to resume his military career and serve the medical needs of Sailors as a uniformed medical officer." (*Id.*).

- Dr. McCarthy considers himself "a civilian with no connection to the United States Navy." (Compl. Ex. ii at 421).

Dr. McCarthy's position renders this issue moot and the Court's judgment improperly advisory. *Better Gov't Ass'n v. Dep't of State*, 780 F.2d 86, 90–91 (D.C. Cir. 1986) ("The doctrine of mootness is a logical corollary of the 'case or controversy' requirement of Article III of the Constitution. A federal court is constitutionally forbidden to render advisory opinions or 'to decide questions that cannot affect the rights of litigants in the case before them.'") (quoting *North Carolina v. Rice*, 404 U.S. 244, 246 (1971)).

Lastly, the United States argues that Counts II and VI of Dr. McCarthy's Complaint should be dismissed because Dr. McCarthy fails to allege facts that he would have earned more pay had he served on active duty after graduation rather than the alternative path he has pursued

---

[10] The Navy has not made a final determination on collecting the debt it alleges Dr. McCarthy owes. (*See* OA Tr. at 49:14–50:12 (the United States noting that the district courts do not yet have jurisdiction over the debt claims either because the "administrative process," is "presently on hold," and "until this court renders a decision."). The Court also acknowledges that the time when the United States finishes the administrative disenrollment proceedings, and either orders Dr. McCarthy into active service or orders repayment of monies owed, constitutes a moment when a new right of action may accrue for initiating litigation. *See United States v. Chrzanowski*, 358 F. Supp. 2d 693, 696 (N.D. Ill. 2005).

as a civilian doctor. (Def.'s Mot. at 43; *see also* Compl. at 3–4 (noting that "Dr. McCarthy is licensed to practice medicine in Pennsylvania and Florida and established a medical practice with Baptist Primary Care in Jacksonville, Florida, in August 2020")). The United States contends that mitigation of damages is required. *See Groves v. United States*, 47 F.3d 1140, 1147 (Fed. Cir. 1995) ("A servicemember deprived of military pay by virtue of a wrongful separation must generally mitigate his damages with any income from subsequent civilian employment. The earnings from such outside employment must be deducted from any award of back pay if he would not have received those earnings had he remained in the service.") *see also Montiel v. United States*, 40 Fed. Cl. 67, 69–72 (1998) (dismissing challenge to DFAS's set-off of civilian earnings pursuant to RCFC 12(b)(6)); *Stovall v. United States*, 94 Fed. Cl. 336, 345 (2010) (plaintiff's inability to prove damages "would be decisive, as this court lacks the authority to award nominal damages"). Again, Dr. McCarthy does not respond to the United States' argument on this count. *See Superior Waste Mgmt. LLC v. United States*, 169 Fed. Cl. 239, 296–97 (2023) ("failure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue."). Therefore, even if the relief sought under Counts II and VI can be considered incidental to money damages, these counts would be dismissed for failure to state a claim upon which relief can be granted.

C.  *Declaratory Judgment Regarding Separation Without Due Process*

Count III seeks a declaratory judgment stating that Dr. McCarthy was improperly separated without a BOI. (Compl. at 65). The United States argues that because the Navy has already decided that Dr. McCarthy was improperly denied a BOI and admitted that he was improperly separated as a result, there is no live case or controversy as to this claim. (Def.'s Mot. at 46); *see also Powell v. McCormack*, 395 U.S. 486, 496 (1969) ("[A] case is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.") (cleaned up); (*see also* AR 10–21; Compl. at 66 (Navy determining that Dr. McCarthy was improperly denied a separation board, and thus was improperly separated)). Dr. McCarthy responds that "he has not been lawfully separated to date and has not received a DD-214 evidencing his correct active status credit . . . [and] has not received notice of a 'with prejudice' revocation of the recoupment action." (Pl.'s Resp. at 42). This response addresses grievances beyond the one identified by the United States for mootness concerns under Count III: whether the decision to not convene a separation board was unlawful. Regarding that specific action, Dr. McCarthy's response does not dispute that the Navy has acknowledged the error. (*Id.* at 12 (noting that BCNR "unanimously found what had already been conceded," by the United States during litigation as well: that the Navy "erred in separating Dr. McCarthy from the Navy without affording him a BOI.")). The Court finds that the Navy's acknowledgment renders the request for declaratory relief moot; Count III must be dismissed.

D.  *Declaratory Judgment Regarding Written Discovery*

Count V of Dr. McCarthy's Complaint seeks declaratory judgment on the Navy's failure to provide Dr. McCarthy with full written discovery. Dr. McCarthy argues that under "SECNAVINST 1920.6C, [he] requested written discovery of all pre-decisional documents provided to [the United States] regarding his unlawfully imposed recoupment debt and involuntary discharge," and that the United States violated the Navy's written discovery rule by not providing the requested discovery. (Compl. at 69–70). Dr. McCarthy's Complaint does not

explain which part of SECNAVINST 1920.6C grants officers the right for written discovery of all pre-decisional documents (the December 2005 version of SECNAVINST 1920.6C spans more than 90 pages). (*See* Pl.'s Resp. at 36, 45); *see also* Secretary of the Navy, SECNAV Instruction 1920.6C (Dec. 15, 2005). The United States argues that Count V also does not seek money damages and is not "incident of and collateral to" a money judgment. (Def.'s Mot. at 39); *see also* 28 U.S.C. § 1491(a)(2). As the Court has found, Dr. McCarthy has not established that the Military Pay Act or any other substantive source of law entitles him to money damages for retroactive full back pay, and without such proper claim, a declaratory judgment to expand the Board's discovery of the same claims cannot be incident of and collateral to a valid money judgment.

### E.  *Violations of Administrative Procedure Act*

Counts VII and VIII of Dr. McCarthy's Complaint recontextualize many arguments by invoking the Administrative Procedure Act ("APA") as an alternative vehicle, seeking an Order compelling the Navy to issue a DD-214, permanently cancel any recoupment action, and grant constructive service credit with back pay, allowances, and automatic promotion along with other benefits. (Compl. at 72–75). Dr. McCarthy grounds this request in the APA's Section 706(1), claiming that the Court may "compel agency action unlawfully withheld or unreasonably delayed." *See* 5 U.S.C. § 706(1). Section 706(1) is not money-mandating and by itself does not provide the Court with jurisdiction to order agency action. *Johnson v. United States*, 2023 U.S. Claims LEXIS 2013 *6 (Fed. Cl. Aug. 2023); *see also Martinez v. United States*, 333 F.3d 1295, 1313 (Fed. Cir. 2003); *Petro Mex, LLC v. United States*, 164 Fed. Cl. 476, 535 (2023) ("[T]he United States Court of Federal Claims lacks jurisdiction over violations of APA claims."). Dr. McCarthy's invocation of Section 706(1) therefore fails to properly invoke the Court's jurisdiction. *CGS-ASP Sec., JV, LLC v. United States*, 162 Fed. Cl. 783, 818 (2022) (when the underlying agency action "does not explicitly violate a statute or regulation . . . citing only to the general APA," does not provide the Court with jurisdiction); *Mitchell v. United States*, 26 Cl. Ct. 1329, 1334 (1992) ("The APA does not mandate the payment of money and, thus, is not an independent basis for suit in this court."). These counts are therefore dismissed for lack of subject-matter jurisdiction.

### F.  *Request for Mandamus Relief and Attorney's Fees*

Count IX of Dr. McCarthy's Complaint seeks the same relief as Count VIII but through the mechanism of mandamus. Dr. McCarthy argues that "[u]nder Title 28 United States Code Section 1361, a reviewing court may compel [the United States] to perform a duty owed to Dr. McCarthy."[11] (Compl. at 74). Here, Dr. McCarthy argues that there has been an unreasonable delay between BCNR's acknowledgment of error (not convening a separation board) and the Navy awarding Dr. McCarthy the specific relief he thinks he is entitled to as a result of that error. (*Id.*). Dr. McCarthy maintains the Court can issue mandamus relief under Section 1361 when the United States "owes a ministerial duty to provide the aforementioned relief." (*Id.*). As the United

---

[11] That statute provides: "The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361.

13

States correctly notes, the Court has rejected the argument that Section 1361 gives the Court independent jurisdiction on numerous occasions. *Alvarado Hosp., LLC v. Price*, 868 F.3d 983, 999 (Fed. Cir. 2017) (" . . . [T]he Court of Federal Claims does not have jurisdiction to issue a writ of mandamus pursuant to 28 U.S.C. § 1361"); *see also Ross v. United States*, 122 Fed. Cl. 343, 348 (2015); *Michelotti v. United States*, 112 Fed. Cl. 187, 192 (2013), *aff'd*, 557 F. App'x 956 (Fed. Cir. 2014*); Del Rio v. United States*, 87 Fed. Cl. 536, 540 (2009). Dr. McCarthy's response to the motion to dismiss does not distinguish this case law or identify any exceptions. (*See generally* Pl.'s Resp.). Accordingly, this claim must also be dismissed.

The final count in Dr. McCarthy's Complaint seeks costs and attorney fees under the Equal Access to Justice Act, as amended, Title 5 United States Code Section 504 and Title 28 United States Code Section 2412. Because the Court does not enter judgment in favor of Dr. McCarthy, Count X is also dismissed.

### III.  Conclusion

For the stated reasons, the Court **GRANTS** the United States' motion to dismiss, (ECF No. 11). The case is **DISMISSED** for lack of subject-matter jurisdiction and failure to state a claim. The Clerk is **DIRECTED** to enter judgment accordingly and close the case.

**IT IS SO ORDERED.**

s/     David A. Tapp
DAVID A. TAPP, Judge